

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INDICTMENT |
| | ) | |
| Plaintiff, | ) | **3:18 CR 304** |
| | ) | **JUDGE CARR** |
| v. | ) | CASE NO.  MAG. JUDGE KNEPP |
| | ) | Title 18, Sections 666(a)(1)(B), |
| SAMUEL A. CRISH, | ) | 1512(c)(2), 1951(a), and 1001, |
| | ) | United States Code. |
| Defendant. | ) | |

GENERAL ALLEGATIONS

1.     From January 2009 to on or about January 31, 2017, Defendant SAMUEL A.

CRISH was Sheriff of Allen County, Ohio.  CRISH was elected Sheriff in 2008, 2012, and 2016.

While Sheriff of Allen County, CRISH oversaw the West Central Ohio Crime Task Force

(WCOCTF).  Prior to being elected Sheriff, from 1991 through 2008, CRISH was an employee

of the Allen County Sheriff's Office (ACSO), holding numerous positions, including commander

of the ACSO Investigative Division.

2.     The ACSO and CRISH, in his capacity as Sheriff of Allen County, made

decisions and took actions on questions, matters, suits, and proceedings that involved the Allen

County Prosecutor's Office, municipal court prosecutors within Allen County, Ohio, the Office

of the Law Director, Criminal Division (Lima, Ohio), and included:

      a.     Investigated criminal cases and criminal law violations occurring within Allen

          County;

ORIGINAL



    b.   Presented cases to the Allen County Prosecutor's Office and the municipal court

prosecutors within Allen County (Ohio), including the Office of the Law Director,

Criminal Division (Lima, Ohio);

    c.   Served as witnesses for the prosecution in cases brought by the Allen County

Prosecutor's Office and municipal court prosecutors;

    d.   Supervised the Allen County Jail.

3.      The ACSO and CRISH, in his capacity as Sheriff of Allen County, were responsible for personnel decisions including staffing the ACSO and Allen County Jail.

4.      The WCOCTF was overseen by the ACSO and was made up of full-time and part-time law enforcement personnel from Allen, Van Wert, and Paulding Counties. The WCOCTF was formed in 1989 to focus on narcotics investigations, but also investigated crimes related to prostitution and fugitive apprehension.  During the course of these investigations, the task force worked in partnership with several other local, state, and federal law enforcement agencies.

5.      For each one-year period between January 1, 2011 and December 31, 2016, WCOCTF received benefits in excess of $10,000 under a Federal program involving a grant or other form of Federal assistance.

6.      Between January 1, 2012 and December 31, 2016, CRISH was required to report to the Ohio Ethics Commission personal financial obligations over $1,000, including loans, and other money received over $1,000 on annual financial disclosure statements.

7.      The Federal Bureau of Investigation (FBI) was a bureau within the United States Department of Justice, a department within the executive branch of the Government of the United States.

## COUNT 1
### (Extortion under Color of Official Right, 18 U.S.C. § 1951)

The Grand Jury charges:

8.    The allegations in paragraphs 1 through 5 are incorporated by reference as if stated fully herein.

9.    At all relevant times, Person 1 was a resident of Allen County. Until in or around November 2012, Person 1 was a nurse employed by a private nursing facility from. In 2012, Person 1's adult children worked for ACSO.

10.   In or around June 2012, Defendant SAMUEL A. CRISH asked to come to Person 1's house. CRISH asked Person 1 for $8,000 in cash. CRISH falsely stated that he needed the money to cover medical bills that he incurred as a result of having no insurance between the time he resigned as a deputy sheriff to run for Allen County Sheriff in 2008 and the time he was sworn in as Sheriff in 2009. CRISH requested that the money be in cash to conceal its nature.

11.   On July 2, 2012, CRISH drafted a note for Person 1 in which CRISH indicated that he would pay the $8,000 back in full within one year.

12.   In or around July 2012, Person 1 gave CRISH $8,000 in U.S. currency while meeting privately in an alley behind the ACSO office building.

13.   On or about August 16, 2012, CRISH approached Person 1 and asked if he/she was able to discuss an issue with the Nurse for the Allen County Jail. Nurses employed at the Allen County Jail were considered employees of the ACSO.

14.   On or about August 20, 2012, CRISH met Person 1 at the Allen County fairgrounds. CRISH stated he was having problems with the nurse for the Allen County Jail. Person 1 stated that he/she would be interested in the position if it ever opened.

3

15.     In or around September 2012, Person 1 applied for the position of Nurse at the Allen County Jail after hearing that the previous nurse had been removed.  CRISH told Person 1 that the job was his/hers, but CRISH needed to "get ducks in a row."  Based on conversations with CRISH, Person 1 understood that the job was his/hers.

16.     In or around October 2012, before Person 1 provided notice to leave his/her employment, CRISH told Person 1 in a telephone conversation that he was going to have to resign as Sheriff.  CRISH claimed he owed money to individuals associated with a business CRISH previously owned.  He stated that his debts would require him to step down as Sheriff.  CRISH further stated that he would try to hire Person 1 as the Nurse for the Allen County Jail before he resigned.  In the same conversation, CRISH stated that he needed $42,000 in order to pay his debts and asked if Person 1 could help.

17.     In or around October 2012, Person 1 took out a home equity line of credit on a property that he/she and his/her spouse owned.  Person 1 obtained the home equity line of credit from Union Bank, a financial institution that was federally insured and which operated and engaged in transactions affecting interstate commerce.

18.     On or about October 12, 2012, Person 1 purchased a cashier's check to be made out to CRISH in the amount of $42,000.

19.     On or about October 12, 2012, Person 1 gave CRISH the check in the alley behind the ACSO office.

20.     On or about October 12, 2012, CRISH and Person 1 signed an agreement stating that CRISH would repay Person 1 in monthly increments of $480 from November 20, 2012 to August 20, 2016.

21.     On or about October 24, 2012, Person 1 completed his/her new-hire paperwork.

22.     On or about December 15, 2012, Person 1 became an employee of the ACSO as the Nurse for the Allen County Jail.

23.     In or around August 2015, while Person 1 was an employee of Allen County, CRISH asked Person 1 for approximately $1,500. CRISH stated that he needed the money to pay funeral costs for a relative. Person 1 paid CRISH in cash. CRISH repaid Person 1 later the same day.

24.     In or around January 2016, CRISH asked Person 1 for approximately $6,000. On or about January 2016, CRISH and Person 1 went to CRISH's bank, where Person 1 transferred approximately $6,000 to CRISH.

25.     From in or around June 2012 to in or around January 2016, in the Northern District of Ohio, Western Division, Defendant did knowingly obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951; to wit, Defendant obtained property not due Defendant or his office, from Person 1, a person known to the Grand Jury, with Person 1's consent, under color of official right, in violation of Title 18, United States Code, Section 1951.

<u>COUNT 2</u>
(Soliciting a Bribe, 18 U.S.C. § 666(a)(1)(B))

The Grand Jury further charges:

26.     The allegations in paragraphs 1 through 7 are incorporated by reference as if stated fully herein.

27.     At all times relevant to this Indictment, Person 2 was a resident of Allen County, who operated a carwash business in Lima, Ohio. Person 2 previously was convicted of a felony.

28.    In 2011, WCOCTF investigated Person 2 for drug offenses. Ultimately, the investigation did not seek criminal charges. During the investigation, Person 2 took money from an informant but did not supply him with drugs.

29.    On or about February 9, 2013, Person 2 called Defendant SAMUEL A. CRISH. Person 2 asked that CRISH not send ACSO deputies for noise or other complaints for a two-day birthday party Person 2 planned to host at a warehouse in Allen County. At previous parties, Person 2 charged a cover fee for admission, sold liquor, and had generated a profit between $10,000 and $15,000. Person 2 wanted to keep law enforcement authorities away from the party to maximize profits and to avoid scaring off partygoers. Person 2 informed CRISH he would personally keep the event under control. During the call, CRISH was surprised to learn how much Person 2 profited from the parties.

30.    On or about March 8, 2013, at approximately 11:19 a.m., Person 2 called CRISH. The call lasted approximately five minutes.

31.    On or about March 8, 2013, at approximately 4:00 p.m., CRISH called Person 2. The call lasted approximately four minutes.

32.    In the evening hours, on or about March 8, 2013, Person 2 hosted the first night of the party. The turnout for the first night of the party was lower than Person 2 expected.

33.    On or about March 9, 2013, at approximately 12:55 a.m., CRISH sent Person 2 a text message stating, "Were you able to come up with that today" (referring to the proceeds from the party). Person 2 responded via text, "Naw it was dead" (referring to the proceeds from the party).

34.    On or about March 9, 2013, Person 2 hosted the second night of the party.

35.     On or about March 10, 2013, at approximately 1:43 p.m., CRISH sent Person 2 a text message asking, "Can you meet me later today or tomorrow it's important dont (sic) want to do it over the phone[.]"

36.     On or about March 10, 2013, CRISH and Person 2 corresponded via text messages to arrange a meeting that later occurred on or about March 11, 2013 at a location on Bible Road in Lima, Ohio.

37.     On or about March 18, 2013, and March 19, 2013, CRISH and Person 2 corresponded via text message to arrange a meeting that occurred on March 19, 2013.

38.     On or about March 20, 2013, CRISH sent Person 2 a text message asking, "Do you have access to 25k" (referring to $25,000).

39.     Between February 9, 2013 and March 31, 2013, the exact dates unknown, CRISH and Person 2 met to discuss a loan. Person 2 did not loan CRISH the $25,000 that CRISH initially requested. Instead, Person 2 gave CRISH $20,000 in U.S. currency, which represented money Person 2 made at his two-day party in March 2013 and from the prior sale of an automobile. CRISH agreed that he would repay the principal of $20,000 with $5,000 interest within a few weeks.

40.     Shortly after Person 2 gave CRISH the $20,000, CRISH informed Person 2 that he intended to gamble with the money.

41.     On or about April 2, 2013, at approximately 1:12 p.m., Person 2 sent CRISH a text message asking, "Any clue as to when you gonna get back with me?" On or about April 2, 2013, at approximately 1:13 p.m., CRISH responded via text message, "Heading there this week" (referring to gambling).

42.     On or about April 9, 2013, at approximately 9:12 a.m., Person 2 sent CRISH a text message asking, "You have any luck?" (referring to gambling).  On or about April 9, 2013, at approximately 9:13 a.m., CRISH responded via text message, "Made a little going back tonight get with you tomorrow" (referring to gambling).

43.     On or about April 11, 2013, at approximately 11:05 a.m., Person 2 sent CRISH a text message asking, "Any luck" (referring to gambling).   On or about April 11, 2013, at approximately 11:26 a.m., CRISH responded via text, "Let me get with you tomorrow unless I get out if (sic) these meetings today[.]"

44.     From on or about April 11, 2013 to on or about April 21, 2013, CRISH and Person 2 exchanged text messages in attempts to arrange a meeting.

45.     On or about April 16, 2013, at approximately 7:53 p.m., Person 2 texted CRISH, "You haven't forgot?" referring to a previously arranged meeting.  On or about April 16, 2013, at approximately 8:42 p.m., CRISH texted Person 2, "No got tied up give me about 30 min will that work[.]"  Person 2 responded, "Yeah thats [sic] cool."

46.     On or about April 21, 2013, at approximately 5:40 p.m., CRISH texted Person 2, "Make sure You (sic) get with me sometime tomorrow need to talk to you."  At approximately 5:42 p.m., Person 2 texted CRISH, "Ok not about me right?"  At approximately 5:45 p.m., CRISH texted Person 2, "It's about you working on it now."  At approximately 5:52 p.m., Person 2 texted CRISH, "Ok i (sic) will see you tomorrow."

47.     On or about April 22, 2013, CRISH and Person 2 met to discuss an undercover operation.  During the conversation, CRISH told Person 2 that he, Person 2, was going to "get indicted."  CRISH stated that he could "take care of it" if Person 2 would forgive $10,000 of the $20,000 loan.

48.     From on or about April 22, 2013 and until on or about May 3, 2013, CRISH made small repayments to Person 2.

49.     From in or around September 2012 to in or around May 2013, CRISH contacted the WCOCTF and asked if anyone had "bought into" Person 2, a reference to having an active investigation into Person 2 for suspected criminal activity.

50.     On or about October 2, 2013, during the execution of a search warrant by the WCOCTF, a target of the investigation indicated that he could provide information regarding Person 2. CRISH directed members of WCOCTF to proceed with interviewing this target about Person 2.

51.     From on or about October 9, 2013 to on or about December 5, 2013, WCOCTF investigated Person 2 for drug trafficking offenses.

52.     On or about February 25, 2014, at approximately 5:12 p.m., CRISH called Person 2, and they spoke for two minutes. At the time this call was placed, Person 2 was represented by counsel.

53.     On or about September 5, 2014, CRISH met with Person 2's defense attorney.

54.     On or about September 22, 2014, CRISH was named as one of three witnesses on Person 2's witness list for his upcoming criminal trial.

55.     On or about September 23, 2014, Person 2 pleaded guilty in Allen County Court of Common Pleas.

56.     On or about December 2, 2014, Person 2 was sentenced to 24 years' imprisonment.

57.     From on or about February 9, 2013 to in or around September 2014, in the Northern District of Ohio, Western Division, Defendant did corruptly solicit, demand, accept,

and agree to accept a thing of value from a person, intending to be influenced and rewarded in connection with a transaction and series of transactions of the West Central Ohio Crime Task Force and Allen County Sheriff's Office involving $5,000 or more, to wit: forgiveness of portions of a $20,000 debt, in exchange for acting in his official capacity to influence real and purported criminal investigations into Person 2, in violation of Title 18, United States Code, Section 666(a)(1)(B).

COUNT 3
(Soliciting a Bribe, 18 U.S.C. § 666(a)(1)(B))

The Grand Jury further charges:

58.     The allegations in paragraphs 1 through 7 are incorporated by reference as if stated fully herein.

59.     At all times relevant to this Indictment, Person 3 was a resident of Allen County, who operated a used car business.

60.     On or about August 19, 2015, members of the ACSO and the WCOCTF conducted a prostitution "sting" operation. Defendant SAMUEL A. CRISH was present at the sting and arrested Person 3 for "soliciting." During the arrest, Person 3 recognized CRISH, and Person 3 stated he was only present to "purchase some furniture." Person 3 then admitted to CRISH that "he was there for sex." CRISH arrested Person 3.

61.     Person 3 was charged with solicitation in Lima Municipal Court.

62.     From in or around August 2015 to on or about September 25, 2015, CRISH visited Person 3's businesses on several occasions. During one visit, CRISH asked Person 3 for a personal loan in the amount of $7,000.

63.     On or about September 25, 2015, Person 3 gave CRISH a $7,000 personal check (Check #5834).  The same day that CRISH received the check from Person 3, CRISH cashed the check at Person 3's bank.

64.     On or about November 24, 2015, during a meeting with prosecutors and law enforcement officers related to the investigation of Person 3, CRISH demanded that the Lima City Attorney's Office drop the case against Person 3.

65.     On or about February 18, 2016, Person 3's solicitation case was dismissed.

66.     On or about February 26, 2016, CRISH texted Person 3 to meet.  CRISH and Person 3 discussed the dismissal of Person 3's case.

67.     At all times material to this indictment, the Allen County Sheriff's Office was an agency of local government that received federal assistance in excess of $10,000 during the one-year period beginning January 1, 2015 and ending December 31, 2015.

68.     Defendant was an agent of Allen County Sheriff's Office, whose duties included investigating criminal law violations in Allen County.

69.     On or about September 25, 2015, in the Northern District of Ohio, Western Division, Defendant did corruptly solicit, demand, accept, and agree to accept a thing of value from a person, intending to be influenced and rewarded in connection with a transaction and series of transactions of Allen County Sheriff's Office involving $5,000 or more, to wit: a $7,000 interest-free personal loan from Person 3, in exchange for acting in his official capacity to influence and frustrate the criminal investigation into Person 3 for solicitation, which resulted in dismissal of Person 3's case, in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT 4
(Soliciting a Bribe, 18 U.S.C. § 666(a)(1)(B))

The Grand Jury further charges:

70.     The allegations in paragraphs 1 through 7 are incorporated by reference as if stated fully herein.

71.     At all times relevant, Person 4 was a resident of Allen County, who partially owned and operated a used car business in Elida, Ohio.

72.     In or around September 2015, Defendant SAMUEL A. CRISH approached Person 4 and asked Person 4 to work as an informant, providing names of individuals who were involved in drug trafficking in Allen County. CRISH stated that he wanted the names to aid the ACSO in conducting investigations.

73.     In or around September 2015, CRISH asked Person 4 to borrow $10,000. CRISH stated that he needed money to repay other individuals who had loaned him money related to his business. CRISH claimed he would lose his position as Allen County Sheriff if he did not pay his debt. CRISH stated that he could repay Person 4 in a few months.

74.     On or about November 3, 2015, Person 4 gave $10,000 to CRISH as requested. Person 4 removed $8,000 U.S. currency from a safe located in the office of Person 4's business. Later, CRISH met Person 4 at Person 4's residence, where Person 4 gave an additional $2,000 in U.S. currency to CRISH.

75.     On or about November 4, 2015, WCOCTF arrested Person 4 for solicitation along with other individuals during a "sting" operation at a motel in Lima, Ohio. All of the other men arrested during the sting were charged.

76.     Following his arrest, but before he was transported to jail, Person 4 asked the arresting officer if he could speak to CRISH.

77.     Following Person 4's arrest, while he was in jail, CRISH called the jail to speak with Person 4.

78.    On or about November 5, 2015, CRISH visited Person 4's business.  CRISH told Person 4 not to worry about his arrest because Person 4 was working for CRISH.

79.    On or about November 17, 2015, CRISH visited Person 4's business.  CRISH asked Person 4 for $500.  Person 4 insisted that CRISH would have to pay back the $500, unlike the $10,000 previously given to CRISH.  Later that day, Person 4 gave CRISH a check for $500 in a parking lot, which CRISH took to the bank to cash.

80.    On or about November 20, 2015, CRISH repaid $500 to Person 4 after Person 4 requested the repayment.

81.    In or around December 2015, CRISH asked Person 4 for $700.  Person 4's adult son provided CRISH with a check for $700.

82.    In or around May 2016, during a phone call with Person 4, CRISH told Person 4 that he was "fine," referring to pending charges.

83.    At all times material to this indictment, Allen County Sheriff's Office was an agency of local government that received federal assistance in excess of $10,000 during the one-year period beginning January 1, 2015 and ending December 31, 2015.

84.    From on or about November 5, 2015 to in or around May 2016, in the Northern District of Ohio, Western Division, Defendant did corruptly solicit, demand, accept, and agree to accept a thing of value from a person, intending to be influenced and rewarded in connection with a transaction and series of transactions of the West Central Ohio Crime Task Force and the Allen County Sheriff's Office involving $5,000 or more, to wit: forgiveness of a $10,000 debt owed to Person 4, in exchange for acting in his official capacity to influence the criminal investigation into Person 4 for solicitation, in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT 5
### (Extortion under Color of Official Right, 18 U.S.C. § 1951)

The Grand Jury further charges:

85.     The allegations in paragraphs 1 through 5 are incorporated by reference as if stated fully herein.

86.     At all times relevant to this Indictment, Person 5 was a resident of Allen County, Ohio.  Person 5 owned a grocery store business in Allen County.  Person 5's business operation, including goods bought and sold, affected interstate and foreign commerce.

87.     In or around October 2013, CRISH visited Person 5's business and asked Person 5 for a personal loan.  During the visit, CRISH inferred that an investigative agency was coming to investigate Person 5's business for suspected illegal gambling operations, but CRISH stated he could stop the investigation if Person 5 provided CRISH with a loan.

88.     CRISH stated that he needed a loan because CRISH lost his business and was short on cash.  CRISH stated that he could return the money "at a certain time" which was expected to be around Christmas 2013.  CRISH stated that he trusted Person 5 not to say anything about the loan.

89.     In or around October 2013, Person 5 gave CRISH a loan of $2,000.

90.     CRISH did not pay back the loan immediately, but paid it back in cash without interest in February 2014 after Person 5 asked for its repayment.

91.     In March 2014, CRISH visited Person 5's business and asked Person 5 for a $6,000 loan, which Person 5 refused to give.

92.     At all times material to this Indictment, Defendant was Allen County Sheriff, an elected official in Allen County, Ohio.

93.    In or about October 2013, in the Northern District of Ohio, Defendant did knowingly obstruct, delay, and affect in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951; to wit, Defendant obtained property not due Defendant or his office, from Person 5, a person known to the Grand Jury, with Person 5's consent, under color of official right, in violation of Title 18, United States Code, Section 1951.

COUNT 6
(Making a False Statement, 18 U.S.C. § 1001)

The Grand Jury further charges:

94.    The allegations in paragraphs 1 through 7 are incorporated by reference as if stated fully herein.

95.    On or about September 6, 2016, in the Northern District of Ohio, Western Division, Defendant SAMUEL A. CRISH did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: during an interview at the FBI Lima Resident Agency, CRISH stated to FBI agents that he never received money from Person 2. The statements and representations were willfully and knowingly false because, as CRISH then and there knew, he had received money from Person 2, in violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL.

Original document  - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.

15