IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CASE NO. 3:18 CR 304 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **SAMUEL A. CRISH,** | |
| | MEMORANDUM OPINION AND |
| Defendant. | ORDER |

### INTRODUCTION

Currently pending before the Court[1] is Defendant Samuel A. Crish's Motion for Compassionate Release / Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 70). The Government filed a response in opposition (Doc. 74), and Crish replied (Doc. 77). Crish also filed a Motion to Strike the victim impact statement attached to the Government's opposition. (Doc. 76).

For the reasons set forth below, the Court denies Crish's Motion for Compassionate Release and his Motion to Strike.

### BACKGROUND

Crish was indicted in June 2018 on two counts of extortion under color of official right, in violation of 18 U.S.C. § 1951 (Counts 1 and 5), three counts of soliciting a bribe in violation of 18 U.S.C. § 666(a)(1)(B) (Counts 2-4), and one count of making a false statement, in violation of 18 U.S.C. § 1001 (Count 6). (Doc. 1, at 3-15). In March 2019, Crish pled guilty pursuant to a plea

---

1. This matter was reassigned to the undersigned upon the retirement of District Judge James G. Carr.

agreement to Counts 1, 3, 4, 5, and 6. *See* Doc. 20 (plea agreement); Doc. 46 (transcript of change of plea proceedings). These charges arose out of actions Crish took while the elected Sheriff of Allen County, Ohio. *See* Doc. 1, at 1.

Judge Carr sentenced Crish to 136 months each on Counts 1 and 5, 120 months each on Counts 3 and 4, and 60 months on Count 6, all to run concurrently. (Doc. 33, at 2).

On July 14, 2025, Crish filed the instant Motion for Compassionate Release. (Doc. 70).

### DISCUSSION

Crish moves this Court for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). He contends his medical conditions constitute extraordinary and compelling circumstances justifying his release. *See* Doc. 70. For the reasons set forth below, the Court denies Crish's motion.

A district court generally lacks authority to "modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). Subsection § 3582(c)(1) – the compassionate release provision upon which Crish relies as the basis for his Motion – provides identified exceptions to this rule. As applicable here, release is appropriate only if (1) the prisoner shows "extraordinary and compelling reasons warrant the [sentence] reduction[,]" (2) the Court determines that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission[,]" and (3) the prisoner "persuade[s] the district judge to grant the motion after the court considers the § 3553(a) factors." *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (internal quotations omitted); 18 U.S.C. § 3582(c)(1)(A). District courts "may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others"; but, "in granting a compassionate-release motion, district courts must address all three steps." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

Section 3582(c) does not define "extraordinary and compelling." But a Sentencing Commission policy statement regarding sentence reductions under 18 U.S.C. § 3582(c)(1)(A) identifies six circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. U.S.S.G. § 1B1.13(b)(1)-(6). These are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) family circumstances of the defendant; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b)(1)–(6) (capitalization altered).[2]

The policy statement describes medical circumstances under (b)(1) that may rise to the level of an "extraordinary and compelling" reason. These include where the individual is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" or "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. §§ 1B1.13(b)(1)(B) and (b)(1)(C).

Crish contends he has serious medical conditions and is receiving inadequate medical treatment in custody, resulting in functional decline and the inability to care for himself within the prison setting. (Doc. 70, at 2). He cites specifically: (1) a skin cancer diagnosis and delayed treatment; (2) hip arthritis for which surgery is required; and (3) chronic pain and loss of mobility.

---

2. The Sixth Circuit recently held § 1B1.13(b)(6) is preempted by the *McCall* decision and that a non-retroactive change in the law cannot constitute an extraordinary and compelling reason for release. *See United States v. Bricker*, 135 F.4th 427 (6th Cir. 2025). There is no change in the law at issue here and subsection (6) is inapplicable.

*Id.* at 1-3. The Government responds that Crish has not established an extraordinary and compelling reason justifying compassionate release. (Doc. 74, at 2). Crish replies that the records demonstrate "[s]ystemic neglect." (Doc. 77, at 2).

Skin Cancer

First, Crish asserts he was diagnosed with skin cancer in February 2024 and "has yet to receive any treatment." (Doc. 70, at 2). Medical records provided by the Government show Crish was diagnosed with a basal cell carcinoma in February 2024 and advised that he needed surgery to remove it. *See* Gov't Ex. A, at 1. At a follow up visit in June 2025, a dermatologist noted the Bureau of Prisons ("BOP") did not follow through with the surgery consultation. *Id.* at 6, 8. The physician stated he would "re-refer to general surgery for excision[.]" *Id.* at 8. In August 2025, Crish saw a surgeon who indicated the surgery was scheduled for September 8, 2025. *Id.* at 15.

"[F]ailure to provide necessary treatment or undue delays in treating serious medical conditions" can present an extraordinary and compelling reason for compassionate release. *United States v. English*, 2022 WL 17853361, at *5 (E.D. Mich.) (quoting *United States v. Verasawmi*, 2022 WL 2763518, at *7 (D.N.J.)). "But 'undue' indicates that not all delays warrant such relief." *United States v. Bailey*, 2025 WL 1114185, at *8 (D.D.C.). To determine whether a delay is "undue" and thus rises to the level of an extraordinary and compelling reason, "courts consider several factors, including the length of delay, repetition of delays, nature of the delayed treatment, and explanation." *Id.* Where delays have been held to constitute extraordinary and compelling reasons, "the delays [are] not only generally longer and repetitive but also preclude[] early identification and treatment of serious or life-threatening diseases." *Id.*

Here, the Court finds that, although there was certainly a delay, it was a singular delay, not repetitive, and the medical records do not indicate the delayed treatment has caused any additional

4

harm. The Court finds Crish's skin condition and treatment delay does not rise to the level of an extraordinary and compelling reason for compassionate release.

Hip Condition / Replacement

Crish also cites his hip condition. He contends that since 2022, he has had "difficulty walking, sitting, standing, dressing, and sleeping." (Doc. 70, at 2). He claims an orthopedic specialist stated he needs a hip replacement due to his severe hip arthritis. *Id.* BOP medical records provided by the Government confirm that Crish saw an orthopedist in January 2025. *See* Gov't Ex. B, at 1-5. The physician noted the x-rays revealed "**ARTHRITIS SEVERE and JOINT SPACE COLLAPSE** but no fracture, no dislocation, no tumor, good bone quality, no loose bodies, no abnormal soft tissue findings, and no foreign body present." *Id.* at 5. The notes indicated that Crish "need[s] left THA [total hip arthroplasty] when released", should follow-up with an orthopedic surgeon on his return home, could take Tylenol/NSAIDS as needed, and that the physician could "arrange image guided hip injections prior to release if time permits." *Id.* (capitalization altered). The physician's notes state "release May 2025", *id.* at 3, which the parties agree is incorrect (Doc. 74, at 5; Doc. 77, at 1-2)

Again, the Court finds that, although there has been some delay regarding this recommended surgery, it is a singular brief delay, not a repetitive one. The physician recommended Crish have surgery sometime around May 2025 (the incorrectly-identified release date). It is now October 2025, only five months later. *See* Doc. 74, at 4 ("[I]t's now only August, which means the BOP is at most two months behind the schedule the orthopedist thought reasonable for a hip replacement."); *Bailey*, 2025 WL 1114185, at *9 ("To start, the singular ten-month delay Bailey alleges is far less than the delays courts have found constitute extraordinary and compelling reasons.") (collecting cases). Further, medical records indicate the BOP is treating Crish's hip pain.

5

*See* Gov't Ex. B, at 6 (April 2025 pain management visit note where Crish reported severe pain and physician stated he would contact BOP regarding ordering an MRI prior to lumbar injections); *id.* at 10 (July 2025 BOP medical note that MRI is pending). The Court finds the BOP's treatment of Crish's recommended hip replacement does not rise to the level of an extraordinary and compelling reason for compassionate release.

Other Conditions / Pain

Crish also cites a variety of conditions and prior incidents resulting in chronic pain. It is not entirely clear which of these he contends contribute to his current condition. He cites an emergency appendectomy he underwent in July 2023, as well as a brain tumor which was removed in August 2023. He asserts that, since the benign tumor removal, he has only had one follow-up visit with the neurosurgeon, and he has "been experiencing headaches for sometime [sic] which he has reported to medical." (Doc. 70, at 1). He asserts these conditions have resulted in "continuous pain" and that he has "fallen multiple times while incarcerated resulting in further injury to his hip and overall health deterioration." *Id.* Specifically, he cites a September 2022 fall when exiting the shower, during which he hit both his head and hip, that has "left [him] in chronic pain." *Id.* at 2. He contends he is not receiving adequate medical treatment while incarcerated and his medical treatment "demonstrates a pattern of medical neglect." *Id.* at 3. To his Reply brief, Crish attaches 86 pages of BOP medical records. (Doc. 77-3). These records, dating from September 2021 to March 2025, show repeated complaints of pain but also demonstrate the BOP's efforts to treat those complaints. *See id.*

Medical records show Crish had a medical visit for right upper arm pain in April 2024. Gov't Ex. C, at 1. He noted the pain was exacerbated by "work[ing] out." *Id.* He further stated the pain started "when doing pull ups 6 weeks ago[.]" *Id.* He was prescribed a topical pain reliever.

6

*Id.* at 2. As the Government notes, "[w]hatever issues he had at that time . . . Crish was nonetheless exercising and doing pull-ups, and doing so nine months after brain surgery and an appendectomy." (Doc. 74, at 5).

In August 2024, Crish presented for increasing pain in his left hip and leg. (Gov't Ex. C, at 3). The physician prescribed topical medication and a steroid injection. *Id.* at 5-6. The doctor noted x-rays had been previously ordered, and that Crish had "[n]o red flag symptoms" related to his pain. *Id.* at 6. In September 2024, Crish was taken to the emergency room after a fall. *Id.* at 7. He was diagnosed with sciatica and treated with a muscle relaxant, which helped. *Id.* at 8. He was also prescribed steroids and ibuprofen. *Id.*

Crish was again seen by a BOP provider for left leg pain in November 2024. *Id.* at 9. Notes indicate that prescribed medications "help[] to make the pain tolerable" but without them, "the pain is unbearable." *Id.* The notes also indicate Crish had previously obtained pain relief from steroids. *Id.* Crish was given a steroid injection. *Id.* at 11.

Crish was again prescribed a course of steroids in February 2025. *Id.* at 13.

In July 2025, a BOP physician noted Crish continued to complain of headaches, and that he would order a neurology consultation. *Id.* at 14. The physician further cited Crish's hip pain and stated an MRI was pending. *Id.*

Finally, Crish contends his medical conditions affect his ability to care for himself while incarcerated, but the Government asserts BOP records do not support this claim. A Medical Duty Status form dated August 13, 2025, indicates Crish is restricted to a lower bunk, but has no work restrictions or limitations. (Gov't Ex. C, at 15). However, the BOP's latest medical note also indicates "pain now interfering with ADL (showering, dressing and physical activity)[.]" *Id.* at 14. Nevertheless, the Court finds that some interference with activities of daily living is not the same

as "substantially diminishe[d] . . . ability . . . to provide self-care", nor has Crish demonstrated that the conditions impacting his ability to care for himself are conditions "from which he . . . is not expected to recover." U.S.S.G. 1B1.13(b)(1)(B).

Upon a full, careful review of Crish's arguments and the BOP medical treatment records, the Court finds Crish has not established extraordinary and compelling reasons for compassionate release. Specifically, Crish has not demonstrated he is either (1) "suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility *and from which he . . . is not expected to recover*" or (2) "suffering from a medical condition that requires long-term or specialized medical care that is not being provided *and without which [he] is at risk of serious deterioration in health or death*." 18 U.S.C. §§ 1B1.13(b)(1)(B) and (b)(1)(C) (emphasis added). Although Crish's medical treatment while incarcerated may not be ideal, neither does the Court find that it has been neglectful or rises to the level of demonstrating an extraordinary and compelling rationale for release.

Motion to Strike

The Government attached a victim impact statement to its opposition brief. (Doc. 74-1). Crish moves to strike the letter, arguing it contains information outside the judgment of conviction, irrelevant to the present inquiry, and poses a risk of unfair prejudice. (Doc. 76). The Government submitted the letter in support of its argument that "[e]ven if moved to consider Mr. Crish's situation extraordinary, the Court still must weigh release against the § 3553(a) sentencing factors." (Doc. 74, at 6). Because the Court finds Crish's medical conditions and treatment do not rise to the level of extraordinary and compelling, it need not reach this further question at which stage the victim impact statement would be considered. *See United States v. Johnson*, 754 F. Supp.

8

3d 305, 315 (E.D.N.Y. 2024) (collecting cases considering victim impact statements as a factor in evaluating motions for compassionate release). As such, Crish's motion to strike is denied as moot.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Crish's Motion for Compassionate Release (Doc. 70) be, and the same hereby is, DENIED; and it is

FURTHER ORDERED that Crish's Motion to Strike (Doc. 76) be, and the same hereby is, DENIED as moot.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: October 27, 2025